IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JOSE ARTURO RIFFO and<br>ALAN C. MONSON,<br><br>Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:10-cr-686-RJS<br><br><br>Judge Robert J. Shelby |

On August 4, 2010, the Grand Jury returned an Indictment charging Defendant Jose Arturo Riffo with two counts of wire fraud and five counts of money laundering. Defendant Alan C. Monson was named as a co-defendant in the wire fraud counts. These charges arise out of conduct alleged to have occurred largely in 2005 and 2006.

Defendants have filed motions (Dkt. Nos. 160 and 166) seeking dismissal of the case based on Speedy Trial Act violations. In its response (Dkt. No. 173), the United States acknowledges a violation of the Speedy Trial Act, and agrees the case should be dismissed. The United States contends the charges should be dismissed without prejudice to seek a superseding indictment. Defendants argue the circumstances here require the court to dismiss the charges with prejudice.

A hearing on the outstanding motions was held on March 18, 2013. Stewart Walz and Jeannette Swent appeared on behalf of the United States. David Finlayson appeared for Defendant Riffo, and Julie George appeared for Defendant Monson. At the conclusion of the hearing, the court ordered that the charges against the Defendants be dismissed without prejudice. This Memorandum Decision and Order articulates the bases for the court's ruling.

## I. Factual Background Relating to the Continuances

There have been many delays in this case. Attribution for the delays is the linchpin issue in resolving the pending motions. The court counts ten continuances in this case comprised of a combination of written motions filed by the parties, sua sponte orders of the court, and motions presumably made orally at hearings. The court examines the context of each of the continuances below.

The first motion for a continuance came on October 6, 2010, only two months into the case. Riffo moved for the continuance through his attorney Gilbert Athay on the grounds that additional time was needed to review voluminous discovery, and a competing trial on Athay's calendar necessitated that the trial date be moved. (Dkt. No. 31.) The United States and Monson both consented to Riffo's request. The court granted the continuance and moved the trial date to January 18, 2011. (Dkt. No. 32.)

On December 6, 2010, the United States moved to substitute counsel. (Dkt. No. 35.) The court granted this motion. (Dkt. No. 37.) This was relevant to Riffo's second motion for a continuance, filed on January 13, 2011. (Dkt. No. 39.) Riffo sought the continuance to enable his attorney more time to get through the voluminous discovery in this case. The United States filed a proffer of additional facts in support of Riffo's motion, citing the previously unexpected

unavailability of counsel for the United States, the need to assign a new prosecutor, the complexity of the case, and the impossibility of preparing for trial by January 18, 2011, even with due diligence. (Dkt. No. 40.) The United States and Monson again consented to the continuance. The court granted Riffo's motion, and continued the trial until March 14, 2011. (Dkt. No. 41.) On January 19, 2011, counsel contacted chambers and submitted that the March trial date would not work. (Dkt. No. 43.) The court moved the date again, to June 16, 2011.

On April 21, 2011, with the case now pending for more than a year, the United States moved for the first time for a continuance. (Dkt. No. 47.) The United States asked for the continuance because the case had been assigned to a new prosecutor on March 28, 2011, and this attorney had only returned to the office on April 21, 2011. The United States submitted that new counsel could only meet the trial deadline if the case was set for a one-week trial, which Riffo opposed. The United States also averred that a parallel civil rights suit had generated a larger evidentiary burden than expected, that prospects for a plea seemed good, and that all counsel had scheduling conflicts that would require the trial be pushed into July regardless of the requested continuance. Neither Monson nor Riffo ultimately opposed the requested continuance. On April 21, 2011, the court granted the motion and extended the trial date to July 18, 2011. (Dkt. No. 48.)

The case became more complicated on June 6, 2011, when Riffo terminated Athay as counsel and Athay sought leave to withdraw. (Dkt. No. 54.) On July 6, 2011, the magistrate judge held a status conference on the issue of appointment of new counsel for Riffo. At the status conference Riffo stated that his family was working on hiring a new attorney for him. The magistrate judge ordered that Riffo had until July 18, 2011, to retain new counsel. On July 18,

3

2011, another status hearing was held before the magistrate judge. Riffo had not obtained counsel, and instead asked the court to appoint new counsel. Jamie Zenger and Rob Hunt were jointly appointed as counsel for Riffo. (Dkt. No. 60.) The court set a new trial date of September 9, 2011.

On August 12, 2011, a month before trial, Riffo moved a third time for a continuance. (Dkt. No. 65.) Counsel for Riffo represented that additional time was necessary in light of counsel's busy trial schedule and the need for time to review several bankers boxes of evidence in the case. The United States stipulated to Riffo's request. Monson filed no objection. The court granted the motion on August 17, 2011, and continued the trial until January 23, 2012. (Dkt. No. 74.)

Riffo's retention of counsel continued to careen, causing Riffo to move for a continuance for a fourth time on December 7, 2011. (Dkt. No. 74.) Riffo's new counsel, David Finlayson, cited the need to review five bankers boxes of material and the technical nature of the case as reasons justifying the continuance. The United States stipulated to the continuance, but requested a hearing on the motion to make a sufficient record, ensure an appropriate duration for the continuance, and to establish a new mutually agreeable trial date in the case. (Dkt. No. 75.) Again, Monson articulated no objection to the requested continuance. On December 12, 2011, the court granted Riffo's motion. (Dkt. No. 76.) On December 13, 2011, the United States filed a motion to modify the court's order to comply with Tenth Circuit requirements. (Dkt. No. 83.) On January 19, 2012, the court issued a modified order and set a new trial date for April 23, 2012. (Dkt. No. 84.)

The case finally appeared to be proceeding on track until the eve of trial, when Riffo filed his fifth motion for a continuance. (Dkt. No. 89.) Riffo's counsel noted that five years of civil litigation preceding the indictment had resulted in the creation of expansive documentary evidence. Counsel further stated that the defense planned to file various motions for *James* hearings and exclusion of 404(b) evidence. Once again, the United States consented to Riffo's motion, and Monson expressed no objection. On April 4, 2012, the court granted Riffo's motion. (Dkt. No. 90.) On April 23, 2012, the United States made a motion to modify the court's order to comply with Tenth Circuit requirements. (Dkt. No. 83.) On April 25, 2012, a new judge was assigned to the case, and the court issued the requested modified order. (Dkt. No. 94.) The court set a new trial date for August 20, 2012.

On August 10, 2012, the case was sidetracked yet again when the magistrate judge held a hearing on an ineffective assistance of counsel motion that Riffo filed *pro se*. (Dkt. No. 139.) Monson was present in the courtroom with his attorneys during the hearing. The magistrate judge denied Riffo's motion for new counsel, ordered that Riffo be placed in custody for a competency evaluation, and noted that the court would set a status conference when Riffo's evaluation was complete. (Dkt. No. 147.) The court tolled the time between the hearing and the proposed status conference for purposes of the Speedy Trial Act. The record reflects no objection by Monson, nor any request that the case be severed to allow Monson to proceed to trial more expeditiously.

On October 10, 2012, the case was reassigned to a third district judge. On December 19, 2012, the magistrate judge held another hearing, received and reviewed the competency evaluation, and found Riffo competent to stand trial. (Dkt. No. 156.) Monson was not present at

5

the hearing. The court released Riffo on conditions because of a medical issue that required attention. At the hearing, counsel for Riffo and the United States indicated that they could be ready for trial in March. In response, the court issued an order on January 8, 2013, setting a new trial date for March 5, 2013. (Dkt. No. 159.)

Numerous other delays have been encountered. Among other things, an initial detention hearing resulted in an ordered competency evaluation at the outset of the case. (Dkt. No. 19.) As noted above, Riffo has had habitual problems working with his appointed counsel. He has filed *pro se* an ineffective assistance of counsel motion (Dkt. No. 139), and has terminated his counsel only to later request reappointment of counsel. The United States is not blameless for the continuances. It appears the United States has changed trial counsel several times during the pendency of the case, resulting in at least some additional delay.

## II. Dismissal under the Speedy Trial Act

The United States stipulates that 99 days of non-excludable time has passed, that a Speedy Trial Act violation has occurred, and that the Indictment must be dismissed. 18 U.S.C. § 3162 (a)(2) ("If a defendant is not brought to trial within the time limit required . . . the information or indictment shall be dismissed on motion of the defendant."). The remaining question, committed to the discretion of the court, is whether the dismissal should be with prejudice, preventing the United States from seeking a superseding indictment.

The Speedy Trial Act itself provides three non-exclusive factors relevant to this question. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: (1) seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; (3) and the impact of a reprosecution on the

administration of this chapter and on the administration of justice." 18 U.S.C. §3162 (a)(2) (numbering added). "The application of the more severe sanction of dismissal with prejudice . . . should be reserved for more egregious violations." *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006) (citing *United States v. Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005)). Indeed, "[a] violation of the speedy trial requirement, by itself, is not a sufficient basis for dismissal with prejudice." *Id.*

Thus, dismissal with prejudice requires sufficiently strong findings of prejudice to a defendant. The case law reveals these findings usually involve a showing of inappropriate or dilatory conduct on the part of the United States. "Absent a showing of appreciable prejudice to the defendant, a district court generally should dismiss serious charges without prejudice under § 3162(a)(2) unless the delay is extended and attributable to intentional dilatory conduct, or a pattern of neglect on the part of the Government." *United States v. Rushin*, 642 F.3d 1299, 1304 (10th Cir. 2011) (citations and quotations omitted). "A district court does not have unfettered discretion to dismiss an indictment with prejudice for violation of the [Speedy Trial Act] . . . . the three nonexclusive factors set forth in § 3162(a)(2) [bind] the district court's discretion" in a way that may result in abuse of this discretion if, in the face of these factors, an indictment is dismissed with prejudice. *Rushin*, 642 F.3d at 1308 (citations and quotations omitted).

Turning to the three factors set forth in the Act, the court finds that the first factor -- the seriousness of the charged offense -- weighs minimally against dismissal with prejudice. On balance, the charges here are not among the most serious regularly filed in this District. But neither are the charges trivial, or so insignificant as to justify a dismissal with prejudice. White collar crime and wire fraud are serious crimes that often have significant effects on real victims.

The second factor, "the facts and circumstances of the case that led to the dismissal" counsels strongly against dismissal with prejudice. The overwhelming majority of the motions for continuance in this case were made by Riffo, and he stipulated to the United States' only motion for continuance. Moreover, Monson himself appears to have consented to every motion for a continuance in this case with the exception of the final order of continuance issued after Riffo's second competency hearing. At a minimum, the record reveals that Monson filed no objections to requested continuances, and until filing his motion to dismiss for Speedy Trial Act violations never expressed his desire to invoke his Speedy Trial rights.

The last continuance came *sua sponte* from the magistrate judge, who appears to have been motivated by issues surrounding Riffo's competency and retention of counsel and the complexity of the case, as well as representations by both sides that a trial date of March 5, 2013 was the earliest possible under the circumstances. (Dkt. No. 159.) Consequently, there are "no significant periods of nonexcludable delay in which the defendant[s] were not complicit." *Rushin*, 642 F.3d at 1308.

While the United States did contribute to the delay by having to reappoint counsel several times and moving directly for one of the ten continuances in this case, this does not begin to approach a level of egregiousness compelling dismissal with prejudice. "Whenever a Speedy Trial Act violation takes place, it is very likely that the government has made a mistake of some sort; in order to secure a dismissal with prejudice a defendant must do more than point to that mistake with rising indignation." *Cano-Silva*, 402 F.3d at 1036. Here, "[t]here is no indication the government was dilatory or neglectful in its prosecution . . . or that it otherwise acted in bad faith." *Abdush-Shakur*, 465 F.3d at 463. Indeed, the United States twice promptly submitted

amended orders granting continuances to the court so that the orders incorporated the level of detail and consideration required by the Tenth Circuit's decision in *United States v. Toombs*, 574 F.3d 1262 (10th Cir. 2009). The United States also, while stipulating to the fifth motion for continuance, asked for a hearing so that an appropriate *Toombs* record could be made and a mutually agreeable, presumably maximally efficient, schedule be entered. Balanced against Riffo's own conduct, the facts of this case do not establish a pattern of neglect on the part of the United States. Riffo moved for every continuance save one directly requested by the United States and two ordered *sua sponte* by the magistrate judge. Moreover, Riffo had habitual issues working with his own counsel, which caused significant delays in this case over the last year. Monson himself has not objected until now to these delays.

The third factor, "the impact of a reprosecution on the administration of this chapter and on the administration of justice," also counsels against dismissal with prejudice. A dismissal with prejudice in some cases may bring the United States in compliance with the Speedy Trial Act and cases interpreting its requirements. This is not such a case. The delays in this case were overwhelmingly attributable to Riffo. Foreclosing the United States the opportunity to obtain a superseding indictment would go too far given the apportionment of responsibility for the delays encountered. Importantly, "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute." *U.S. v. Taylor*, 487 U.S. 326, 342 (1988). Here, "this possibility alone encourages Government compliance with the [Speedy Trial Act], thus promoting the [Act's] sound administration and furthering the public interest." *Rushin*, 642 F.3d, at 1309 (citing *United States v. Zedner*, 547 U.S. 489, 499 (2006)).

Regardless, the statutory scheme governing dismissal for violations of the Speedy Trial

9

Act "is designed to promote compliance with the Act without needlessly subverting criminal prosecutions." *Zedner*, 547 U.S. at 489. Dismissing this case with prejudice in the face of Riffo's responsibility for delays and Monson's acquiescence to the continuances would go too far in terms of the structural machinery of criminal law. Such a dismissal on these facts would subvert the delicate balance inherent in the Speedy Trial Act's operation between a defendant's rights and the interests of the public in a functioning, flexible criminal justice system. "The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws" while still imposing "some costs on the prosecution and the court, which further encourages compliance." *Id.* at 499.

The Defendants' motions also raise violations of the Sixth Amendment. Arguments for these violations fail on their own merits. "To determine whether a defendant's Sixth Amendment right has been violated, the court balances four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) whether the delay prejudiced the defendant." *United States v. Larson,* 627 F.3d 1198, 1207 (10th Cir. 2010). "[T]he second factor-who is more to blame for the delay-often dictates the outcome of cases." *United States v. Loud Hawk,* 474 U.S. 302, 315 (1986). Indeed, it is described as "[t]he flag all litigants seek to capture." *Id.* This is because, in much of the case law, the other prongs come out marginally in favor of one or the other outcome. Here, Riffo cannot capture the flag. Again, responsibility for the majority of the continuances and delays rests with him. While the United States is not blameless – it did substitute counsel several times and move for a continuance – Riffo has attempted to have his counsel declared ineffective, and has moved for the vast majority of continuances in this case. No violation of the Defendants' Sixth Amendment

rights occurred through this delay.

Buttressing this conclusion is the absence of appreciable prejudice to either defendant. A defendant's showing of "some prejudice from the delay . . . [is] not sufficient to compel dismissal with prejudice." *United States v. Artez*, 290 Fed. App'x. 203, 207 (10th Cir. 2008) (unpublished). Monson has never been in custody in this case. While suffering the inconvenience of traveling to hearings and court events, this inconvenience is not so great as to result in a finding of prejudice that rises to the level of a constitutional violation. Riffo asserts that these delays caused him undue prejudice as well, but this bare assertion, especially in the face of his own culpability for the delays, falls far short of what is required to tip this factor in his favor. Weighing the factors, there were no violations of either Defendants' Sixth Amendment rights.

### III. Conclusions

For the reasons stated above the court GRANTS the motions to dismiss (Dkt. Nos. 160 and 166). The Indictment is HEREBY DISMISSED without prejudice as to all defendants. The Clerk of Court is directed to close the case. All remaining motions are termed as moot.

SO ORDERED this 31st day of July, 2013:

BY THE COURT

_____
ROBERT J. SHELBY
United States District Judge